**Joan DUFFANY et al., Plaintiffs,**

v.

**Barry VAN LARE, Acting Commissioner of the New York State Department of Social Services, and Haswell P. Brayton, Jr., Commissioner of the Jefferson County Department of Social Services, Individually and in their official capacities, Defendants.**

No. 72-CV-238.

United States District Court,
N. D. New York.

May 22, 1973.

John R. Kennedy, Legal Services-Health and Nutritional Development, Rochester, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of N. Y., Albany, for defendant, Barry Van Lare; Joseph T. Hopkins, Asst. Atty. Gen., James H. Sweeny, Deputy Asst. Atty. Gen., of counsel.

Stanford H. Waite, Watertown, for defendant, Haswell P. Brayton, Jr.

PORT, District Judge.

*Memorandum-Decision and Order*

This case is before the court on defendants' motion to dismiss the complaint on the grounds, inter alia, of failure to state a claim upon which relief can be granted and lack of jurisdiction.

The plaintiffs in a twenty-six page complaint alleging eight separate causes of action seek the following relief:

1. An order that the action be maintained as a class action;

2. The issuance of a permanent injunction ordering the State Commissioner of Social Services:

(a). to establish or cause to be established by the Jefferson County Department of Social Services "a fee structure, which is adequate and designed to enlist a sufficient number of dentists of that County to actively participate in the State Medicaid Program, so that * * * dental care and services to the extent they are available to the general population" will be available to the plaintiffs and those similarly situated in Jefferson County;

(b). to establish or cause to be established a similar fee structure with reference to each local Welfare District throughout the State;

(c). "to insure reasonably prompt dental care and services are available to named plaintiffs" and members of the class, situated in Jefferson County, within their own respective community "when such services are available to others";

(d). to provide the same relief statewide;

(e). "to immediately review and exercise general supervision over the administration of the State Medicaid Program by the Jefferson County Department of Social Services to insure that dental care and services are available to named plaintiffs" and members of the class, situated in Jefferson County;

(f). to provide the same relief statewide;

3. The issuance of a permanent injunction ordering the Commissioner of the Jefferson County Department of Social Services:

(a). to establish a fee structure as indicated in 2(a) above to the extent that the State Commissioner of Social Services has not done so;

(b). to immediately "make available dental care and services to named plaintiffs" and members of the class, "situated in Jefferson County either by contracting with the dentists of Jefferson County or by the department directly furnishing such services itself."

The plaintiffs in a preliminary statement allege in summary that they seek an order requiring the defendants to enforce and obey the provisions of the Social Security Act, 42 U.S.C. § 1396 et seq.; the Code of Federal Regulations; the Handbook of Public Assistance Administration, Supplement B; the New

York State Social Services Law; and the New York State Plan for Medical Assistance providing for the availability of dental care and services to all persons who are eligible and qualify under New York State Medical Assistance Program commonly known as Medicaid.

Nowhere is it alleged that any of the statutes or regulations are constitutionally infirm.

## THE PARTIES

The defendants are the Commissioner of Social Services of New York [1] and the Commissioner of Social Services of Jefferson County.

The 29 plaintiffs are the mothers and children of four families receiving ADC, and the parents and children of a fifth family receiving home assistance. All are enrolled under Medicaid, and all live in or near the City of Watertown, New York in Jefferson County.

## THE COMPLAINT

The complaint in substance alleges that one or more plaintiffs in each family needed dental care; that dentists in the City of Watertown were called to obtain an appointment and were told the patients were under Medicaid; that appointments were not given. For example, it is alleged that one of the Duffany children was advised by a school nurse in January, 1972 of the need for dental work and two others were so advised in February, 1972. In January, Mrs. Duffany alleges she called all of the Watertown dentists but was unable to obtain an appointment. Thereafter, one of the children was taken to Carthage, New York by a probation officer and was treated by a dentist there. Two more calls to dentists in Watertown on April 6, 1972 she alleges were also unproductive. She alleges generally that no dental services were obtainable.

The first designated cause of action alleges that under Social Security law,

regulations and a HEW Handbook, the State Social Services Commissioner has an obligation to insure that fees paid to dentists in Jefferson County under Medicaid are designed to enlist enough dentists so that dental services are available to Medicaid recipients at least to the extent such are available to the general population, that a maximum reimbursement schedule established by state regulation[2] and utilized for payment is inadequate and not so designed, and that as a result, dentists are not available in sufficient numbers.

The second cause of action alleges the State Commissioner's failure to insure adequate fees, statewide.

The third alleges Jefferson County's Commissioner's failure to set adequate rates as he is required to do by certain *state* law provisions.

The fourth cause of action alleges state commissioner failures to insure Jefferson County adherence to other federal statutory and regulatory requirements concerning promptness of care and avoidance of requiring recipient travel to get care.

The fifth cause of action alleges the same failure statewide on the State Commissioner's part.

The sixth cause of action alleges the Jefferson County Commissioner's failure, in substance, to abide by *state* law requirements to provide care by alternate means, such as by contracting for dental services.

At oral argument, plaintiff characterized this cause of action, relating to a general duty of the county under state law to provide care, and the third cause of action, relating to a specific duty of the county under state law to set adequate fees, as nonfederal pendant jurisdiction matters.

The seventh cause of action alleges a failure of the State Commissioner to adequately supervise Jefferson County

---

1. The defendant Barry Van Lare was Acting Commissioner when suit was instituted. Abe Lavine has since succeeded him as Com-

missioner. All papers filed in the action are amended accordingly.

2. 18 NYCRR § 535.1 et seq.

Medicaid as allegedly required by quoted provisions of New York Law, and a general reference to the Social Security Act and state plan. The eighth and final cause of action alleges this same failure to require the furnishing of adequate dental care and services, statewide.

All claims are based on statutory or regulatory violations. Plaintiffs make no constitutional claims.

## JURISDICTION

Plaintiffs assert three bases for subject matter jurisdiction: 1) civil rights—28 U.S.C. § 1343(3) & (4) and 42 U.S. C. § 1983; 2) federal question—28 U.S. § 1331 (arising under laws of the U. S. and matter in controversy in excess of $10,000.00) ; and 3) suits arising under Acts of Congress regulating commerce—28 U.S.C. § 1337.

### 1) *Civil Rights Jurisdiction*

Plaintiffs' place greatest reliance on 28 U.S.C. § 1343(4), and 42 U.S.C. § 1983.[3] The plaintiffs find unquestioned support for their claim of jurisdiction under the civil rights statutes. Unfortunately, the arbiter entertains doubts where the advocate enjoys certitude.

3. 42 U.S.C. sec. 1983. Civil Action for Deprivation of Rights provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.
   28 U.S.C. sec. 1343. Civil Rights and Elective Franchise, provides in pertinent part:
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person.
   . . .
   (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

4. Subdivision (3) covers a cause of action for deprivation of "rights . . . secured by the Constitution of the United States or by an Act of Congress, providing for equal

Jurisdiction is not claimed to be based on Title 28 § 1343(3).[4] They rely instead on subdivision 4 of that section. In a sort of boot strap operation, they contend that section 4 affords relief "under any Act of Congress providing for the protection of civil rights, including the right to vote."; they then find the necessary "Act of Congress" in 42 U.S.C. § 1983 since it provides a cause of action for "deprivation of any rights, privileges or immunities secured by the Constitution *and laws*" (italics added) ; the provisions of the Social Security Laws and the Regulations and Handbook issued thereunder are then engrafted into section 1983 as the "and laws."

The plaintiffs argue that § 1983 is "an Act of Congress providing for the protection of civil rights" which affords them jurisdiction under subdivision 4 of § 1343.[5]

They further contend that no constitutional claims need be raised. To further bolster their claim, they contend that Lynch v. Household Finance Corp.,[6] by striking down the distinction between personal and property rights, brings the Social Security Act, 42 U.S.C. § 1396 et seq., within the meaning of § 1983.[7]

rights . . .". Plaintiffs' make no constitutional claim and the Social Security Act is not an act "providing for equal rights." Aguayo v. Richardson, 473 F.2d 1090, 1101 (2nd Cir. 1973) ; Almenares v. Wyman, 453 F.2d 1075, 1082 n. 9 (2nd Cir. 1971), cert. den. 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

5. But "28 U.S.C. § 1343(3) [is] the jurisdictional counterpart to the cause of action created by § 1983 . . .." Tichon v. Harder, 438 F.2d 1396, 1398, n. 4 (2nd Cir. 1971).

6. 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

7. In support of these contentions, plaintiffs cite Rosado v. Wyman, 397 U.S. 397, 90 S. Ct. 1207, 25 L.Ed.2d 442 (1970), Hall v. Garson, 430 F.2d 430 (5 Cir. 1970), Gomez v. Florida State Employment Service, 417 F.2d 569 (5 Cir. 1969), Bomar v. Keyes, 162 F.2d 136 (2 Cir. 1947), and Bass v. Rockefeller, 331 F.Supp. 945 (S.D.N.Y.), dismissed as moot, 464 F.2d 1300 (2 Cir. 1971).

This contention is flawed because "[t]he Social Security Act is not one 'providing for the protection of civil rights.'",[8] and "reliance on 28 U.S.C. § 1343(4) is foreclosed, so far as this circuit is concerned."[9]

Carrying the plaintiff's contention to its logical conclusion, coupling the alleged deprivation of rights, of any nature, under any Act of Congress with the "and laws" in § 1983, ipso facto, affords jurisdiction under § 1343(4). In summary, the plaintiff contends that by tying the Social Security Act in with § 1983, jurisdiction is afforded under § 1343(4) which concededly would not exist on the basis of the Social Security Act provisions alone. I disagree.

Analysis of the provisions and background of both §§ 1343(4) and 1983 reveals their inability to support jurisdiction in a case such as this, either alone, or as plaintiffs' argue here, in combination.

Subdivision 4 of § 1343 was passed in 1957 as part of the Civil Rights Act of that year. Section 1983 has its source some 86 years prior, in the Civil Rights Act of 1871. The Medicaid provisions of the Social Security Act arrived in 1965, some eight years after subdivision 4. What plaintiffs' argument boils down to is that a 1957 civil rights jurisdictional grant provides this court jurisdiction to hear claims under a 1965 statute not involving civil rights, because of the words "and laws" in a substantive civil rights statute passed in 1871. Nothing, of course, in the words or legislative history of the Medicaid act sup-

ports this theory, and analysis of § 1343(4) and § 1983 leads to the same conclusion in regard to them.

Part III of the 1957 Civil Rights Act amended 28 U.S.C. § 1343 by adding the words "and elective franchise" to the catchline, and adding subdivision 4.[10] Congress expressed its intent as follows: "These amendments are merely technical amendments to the Judicial Code so as to conform it with amendments made to existing law by the preceding section of the bill."[11] The preceding section concerned amendments to 42 U.S.C. § 1985, concerning conspiracies to deprive citizens of civil rights. It permitted the Attorney General to bring such suits, removed any need to exhaust administrative remedies, and established jurisdiction for district courts to hear such suits.[12] So at this point, the most that can be said for the "technical amendment" of adding subdivision 4 to § 1343 was to conform Title 28 jurisdiction provisions to this Title 42 jurisdiction provision. Accordingly, the addition of subdivision 4 of § 1343 provides no support for an argument that it can support statutory medicaid claims. Ironically, the amendments to 42 U.S.C. § 1985 were not passed. In its final form, the bill made the conforming Title 28 technical amendments, but they were left hanging in Part III, as it were, in mid-air, as the matter cited as prompting the need for the amendment was deleted.

However, Part IV, the voting rights section of the bill, which was passed, contained a jurisdictional provision[13] which the history notes was "the same

---

8. McCall v. Shapiro, 416 F.2d 246, 249 (2 Cir. 1969).

9. Almenares v. Wyman, 453 F.2d 1075, 1082 n. 9 (2 Cir. 1971), citing McCall, supra.

10. Pub.L. 85–315, § 121 (Sept. 9, 1957), 1957 U.S.Code Cong. & Admin.News, p. 707.

11. H.R.Rep.No.291, 85th Cong., 1st Sess., 1957 U.S.Code Cong. & Admin.News, p. 1976.

12. Id., 1957 U.S.Code Cong. & Admin.News, pp. 1974–1976.

13. Pub.L. 85–315 (Sept. 9, 1957), 1957 U.S. Code Cong. & Admin.News, p. 707, provides in pertinent part:

*Part IV—To Provide Means Of Further Securing And Protecting The Right To Vote*

Sec. 131. Section 2004 of the Revised Statutes (42 U.S.C.1971), is amended as follows:

(d) the district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this section and shall exercise the same without regard to whether the party aggrieved shall have exhausted any administrative or other remedies that may be provided by law.

as"[14] the jurisdiction provision in Part III cited as occasioning the technical amendments to conform the Judicial Code by adding subdivision 4 to § 1343. Since it was identical to the provision not passed, it would, of course, equally require the conforming jurisdictional amendments and this is no doubt why the amendment adding subdivision 4 to § 1343 was retained.

The legislative history of the Part IV voting rights provision discusses distinctions between § 1983 and the voting rights provisions, noting that § 1983 is limited to acts under color of state law, while the latter are not; they are aimed also at individual action, as the constitutional right to vote in federal elections does not have its origin in the 14th and 15th amendments, with their color of law limitations.[15]

Subdivision 3 of § 1343 does have the color of law limitation; accordingly, the addition of a jurisdictional grant not so limited was required to enforce the new voting rights, and thus the jurisdictional provision in the voting rights part, and the provision to conform Title 28, section 1343 to read: "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

In sum, it is clear the purpose of enacting subdivision 4 of § 1343 was not to drastically enlarge federal jurisdiction, nor to amend or expand subdivision 3 of § 1343, nor 42 U.S.C. § 1983, but rather to reflect in Title 28 a conforming jurisdictional grant based solely on voting rights.

■ There is nothing in the language of the legislative history of § 1343(4) that in any way supports the jurisdiction of this court to hear Social Security statutory claims, whether directly or in-directly in conjunction with 42 U.S.C. § 1983. I am neither bound nor persuaded by statements to the contrary, respectfully considered, in the cases cited by plaintiff. Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969), which concerned laws protecting migrant workers, rested on alternative jurisdictional grounds (28 U.S.C. § 1337) in addition to § 1343 after finding a cause of action alleged under § 1983. Bass v. Rockefeller, 331 F.Supp. 945, 949, n. 5 (S.D.N.Y.) dismissed as moot, 464 F.2d 1300 (2d Cir., 1971), found jurisdiction under § 1331, and after stating that "it is unnecessary to determine whether jurisdiction properly exists under 28 U.S.C. §§ 1343 and 1337," added in a footnote that the § 1343(4), § 1983 combination affords a "strong likelihood" of jurisdiction because "the Social Security Act seems to provide the plaintiffs with certain enforceable rights or privileges." In both cases, the words "and laws" in § 1983 concerning deprivation of rights, privileges and immunities under the Constitution and laws were viewed as supporting jurisdiction for federal statutory claims. Wynn v. Indiana State Dept. of Public Welfare, 316 F.Supp. 324 (N.D.Ind.1970), squarely holds the contrary based on a detailed analysis of § 1983 which reveals that those words "and laws" were not in the 1871 congressional enactment of which § 1983 is a codification, but rather were added without comment or explanation by the revisor commissioned to codify laws.

It can be argued that the Supreme Court has not made clear whether or not jurisdiction under § 1343 will be extended to claims grounded on inconsistency between state and federal statutes or regulations.

All suits in which the Supreme Court has found jurisdiction under § 1343 have involved a substantial constitution-

14. H.R.Rep.No.291, 85th Cong., 1st Sess., 1957 U.S.Code Cong. & Admin.News, p. 1976.

15. Id., p. 1977.

al claim,[16] but on at least two occasions the court has specifically left open the question of jurisdiction under § 1343 of a claim based solely on grounds of inconsistency with federal statutes.[17]

The manner statutory claims are reached in these cases completely avoids resolution of any jurisdictional question under § 1343 or amount in controversy question under § 1331, for the statutory question is viewed as "pendant" to the constitutional claim. Then, in deference to the rule that constitutional issues should not be reached if a case can be disposed of on other grounds, the statutory questions are gone into first, with the case often decided upon them alone.[18]

Nevertheless, in this circuit, jurisdiction is not afforded to suits claiming a deprivation of rights under § 1983 absent a constitutional question.[19]

Plaintiffs advance no constitutional claim whatever. Accordingly, their suit may not be maintained as a cause of action granted by § 1983. Even if by some legal sleight of hand a Social Security Act violation could be transformed into a violation of § 1983, jurisdiction to vindicate it would be based on § 1343(3) (which is not asserted) and not on subdivision (4) on which reliance is placed.

### 2) *Federal Question Jurisdiction*

Plaintiffs also assert jurisdiction under 28 U.S.C. § 1331:

§ 1331. Federal question; amount in controversy; costs

(a) the district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

█ Assuming without deciding that plaintiffs sufficiently raise a federal question, this asserted basis for jurisdiction must also fail as it is clear in this case that the amount in controversy does not exceed $10,000.00. Plaintiff makes two claims as to jurisdictional amount. The first is that the matter in controversy exceeds $10,000.00 for each plaintiff, separately. The factual allegations of the complaint do not support this. Of the 29 plaintiffs, only 12 are alleged to be in need of any dental work, and of these, 4 did receive treatment under medicaid, although outside of Watertown. In sum, the matter in controversy for 21 of the 29 plaintiffs is little or nothing. For the remaining 8, it is clear beyond any doubt that it cannot even begin to approach $10,000.00. A dental bill of that magnitude as a general matter would indeed be an extraordinary occurrence. No facts are apparent in this case that would support even speculation that such could be the situation here.

It appears here to a legal certainty that the claim of any named plaintiff is less than the jurisdictional amount, and dismissal is warranted. St. Paul Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Arnold v. Troccoli, 344 F.2d 842 (2d Cir. 1965).

█ Plaintiffs assert that in the alternative their claims and those of the class may be aggregated and that combined they exceed $10,000.00. However,

16. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Lynch v. Household Finance, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

17. King v. Smith, supra, 392 U.S. at 312, n. 3, 88 S.Ct. 2128; Rosado v. Wyman, supra,

397 U.S. at 404–405, nn. 4 & 7, 90 S.Ct. 1207.

18. *See, e. g.,* Rosado v. Wyman, supra.

19. Aguayo v. Richardson, 473 F.2d 1090, (2 Cir. 1973); Hagans v. Wyman, 471 F.2d 347 (2 Cir. 1973); Almenares v. Wyman, 453 F.2d 1075 (2 Cir. 1971); Russo v. Kirby, 453 F.2d 548, 551 (2 Cir. 1971). *See* Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck, 463 F.2d 620 (2 Cir. 1972); Rosenberg v. Martin, 478 F. 2d 520, 524 (2 Cir. 1973).

even assuming that class action status was granted, which is dubious,[20] and the combined claims of the class exceeded $10,000.00, plaintiffs assertion must fail, for aggregation of claims is not permissible here.[21]

### 3) *Commerce jurisdiction*

[4] Plaintiffs final jurisdiction assertion, 28 U.S.C. § 1337, which provides jurisdiction for suits arising under Acts of Congress regulating commerce, is clearly without merit.[22]

## EXHAUSTION

Defendants also claim that plaintiffs have failed to exhaust their administrative remedies, in that no plaintiff made any attempt to obtain relief through the fair hearing procedures of the New York Social Services Department before resorting to suit in this court. Plaintiffs respond that exhaustion is not required in this circuit in § 1983 cases where resort to administrative remedies would be inadequate and futile, citing Eisen v. Eastman,[23] the case upon which the exhaustion doctrine in this area is bottomed.

The regulations provide that Medicaid recipients have a right to a fair hearing on the grounds, among others, of inadequacy in amount or manner of payment, objections to department policy as it affects the recipient's situation, and any other grounds affecting the recipient's entitlement to assistance or the amount thereof or the time of payment thereof.[24] There is a provision for group hearings where two or more request such a hearing and the sole issue is one of objection to department policy.[25] It is further provided that if requested, necessary transportation for appellant, his representative, and witnesses, and other costs and expenditures reasonably related to the hearing shall be provided.[26] The commissioner's decision after hearing must recite the issues, facts and pertinent laws and rules, and make findings and determinations, giving reasons for its determinations, and when appropriate, direct specific action by officials.[27] Finally, it is provided that when as a result of fair hearings, there are indications that provisions of board rules or department regulations, or both, may be inadequate, review of such provisions shall be promptly initiated by the department.[28]

The substance of plaintiffs' claim of inadequacy of fair hearings is that it would be futile to attack the commissioner's own regulations before the commissioner, and expect him to change them. This conclusion on the part of the plaintiffs appears presumptuous. The legal presumption that a public official would perform his duty should con-

---

20. *See* Zahn v. International Paper Co., 469 F.2d 1033 (2 Cir. 1972), cert. granted, 410 U.S. 925, 93 S.Ct. 1370, 35 L.Ed.2d 585 (1973).

21. *See* Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Troy Bank v. Whitehead Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911); Givens et al. v. W. T. Grant Co., 457 F.2d 612 (2d Cir. 1972), vacated and remanded on other grounds, 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972), order modified, 472 F.2d 1039 (2d Cir. 1972); Rosado v. Wyman, 414 F.2d 170, 176–177 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Potrero Hill Community Action Committee v. Housing Authority, 410 F.2d 974 (9th Cir. 1969); Johnson v. New York State Education Dept., 319 F.Supp. 271 (S.D.N.Y.1970) aff'd on other grounds, 449 F.2d 871 (2 Cir. 1971), vacated and remanded to D.Ct. to consider mootness, 409 U.S. 75, 93 S.Ct. 259, 34 L.Ed.2d 290 (1972). *But see,* Bass v. Rockefeller, 331 F.Supp. 945 (S.D.N.Y.) dismissed as moot, 464 F.2d 1300 (2d Cir. 1971).

22. Aguayo v. Richardson, 473 F.2d 1090 (2 Cir. 1973); Almenares v. Wyman, 453 F.2d 1075 (2 Cir. 1971).

23. 421 F.2d 560 (2 Cir. 1969).

24. 18 NYCRR § 358.4(a)(3), (5) & (6).

25. Id., § 358.6.

26. Id., § 358.10.

27. Id., § 358.18.

28. Id., § 358.25.

trol; and if there is substance to plaintiffs' complaints compliance with pertinent regulations might well resolve the problem.

Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), relied on by plaintiffs is distinguishable. Plaintiff there claimed constitutional violations. The plaintiffs here do not. In *Houghton,* plaintiff and others on his behalf made substantial efforts to obtain relief within the administrative agency. Plaintiffs here have made no such effort. Finally, the very agency from which it was contended Houghton should seek relief had made is absolutely clear that if asked, they would not grant it. That does not appear here.

Plaintiffs point to the protests by *dentists* to the 1969 cuts in Medicaid dental rates and services, and that despite the *dentists* continuing insistence that they be restored, the department has failed to do so. How this demonstrates the exhaustion of remedies or the futility of resort to them by the plaintiffs is not clear. That dentists want more money, and that persons needing dental care aren't getting it, are two different propositions and could lead to different responses by New York Medicaid administrators.

Further, the materials presented to the court most recently by plaintiffs[29] demonstrating fees for physicians have just been increased as much as 50%, evidence that fee increases in general are not a foreclosed subject. Further, it appears therein that a study of dental fees is currently underway, as well as revision of forms in cooperation with dentists to reduce their paperwork. Red tape was a factor cited on oral arguments by plaintiffs as to why their complaint was not limited to amount of fees. All in all, it appears that Medicaid in general, and dental care in particular are subjects of ongoing reevaluation with the continuing goal of improvement. This, coupled with such provisions of the fair hearing procedures as the right to attack the very regulations of the department, in group hearings if desired, and the mandate to the department to promptly review its regulations merely upon "indications" from fair hearings that they are inadequate, do not add up to the futility of administrative review found in *Houghton,* nor to the inadequacy, or certain or probable futility required in this circuit under Eisen v. Eastman.[30] Accordingly, plaintiffs have not shown circumstances justifying their failure to exhaust their administrative remedies.[31]

29. Affidavit of plaintiff's counsel, with attachments, Feb. 8, 1973.

30. 421 F.2d 560, 569 (1969).

31. Even going beyond the conditions imposed by *Eisen* on the civil rights exception to the normal exhaustion requirement, however, brings the same result. There are a number of Supreme Court cases which together could support a rule that exhaustion of administrative remedies is not required in civil rights cases in any event, no matter how efficacious those remedies might be. Among these cases are Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), and Wilwording v. Swenson, 404 U.S. 249, 92 S. Ct. 407, 30 L.Ed.2d 418 (1971). In every

one of these cases, however, a violation of constitutional rights was alleged, and it appears clear that it is on this factor that the exception to exhaustion in civil rights cases is based. As stated in *McNeese,* " . . . wherever the Federal courts sit, human rights under the *Federal Constitution* are always a proper subject for adjudication . . ." and jurisdiction may not be declined because these rights can be adjudicated elsewhere. *McNeese,* supra, 373 U.S. at 674 n. 6, 83 S.Ct. at 1437 (emphasis added). In *King* it was stated that exhaustion is not required "where the *constitutional challenge* is sufficiently substantial . . .". *King,* supra, 392 U.S. at 312, n. 4, 88 S.Ct. at 2131 (emphasis added). This circuit and others entertain the question of exception from the exhaustion requirement only when constitutional violations are alleged. *See, e. g.,* Eisen v. Eastman, 421 F.2d 560, 567–569 (2 Cir. 1969), which makes clear that the possibility of the exception to exhaustion arises only when constitutional violations are al-

Recognizing the continuing doubts as to the viability of the exhaustion doctrine,[32] it seems more appropriate, if the death knell is to be sounded, it be done by an appellate court rather than this one.

For the reasons herein, it is

Ordered, that the complaint herein be and the same hereby is dismissed for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

leged, and Sostre v. McGinniss, 442 F.2d 178, 182 (2 Cir. 1971), where civil rights claims not involving constitutional rights were dismissed, and as to the claims remaining, exhaustion was not required. *See, e. g.,* Hall v. Garson, 430 F.2d 430, 434–436 (5 Cir. 1970), and Martin v. Duffie, 463 F.2d 464 (10 Cir. 1972).

Accordingly, it appears that even if jurisdiction were found to lie for this case under

§ 1983, plaintiffs' exhaustion of their fair hearing remedies would still be required, as they allege no deprivation of constitutional rights.

32. *See* Goetz v. Ansell, 477 F.2d 636 (2 Cir. 1973) ; Gibson v. Berryhill, 411 U.S. 564, 581, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (concurring opinion, Marshall, J.).