Thomas MOORE, Plaintiff-Appellant,

and

Vermont Welfare Rights Association, Intervenor-Appellant,

v.

Joseph BETIT, Commissioner of the Vermont Department of Social Welfare, et al., Defendants-Appellees.

Nos. 28, 29, Docket 74–1300, 74–1301.

United States Court of Appeals, Second Circuit.

Argued Sept. 20, 1974.

Decided Feb. 10, 1975.

We reverse the finding of the court below that plaintiffs showed only indirect or speculative damages and we remand for further consideration of the matter in controversy.

Plaintiffs seek a declaration that the present personnel policies of the State of Vermont pertaining to the Department of Social Welfare's subprofessional employees are invalid and a preliminary and permanent injunction ordering the State officials to provide for the training and effective use of public assistance recipients and other persons of low income as subprofessional employees in the Vermont Department of Social Welfare.[3] Plaintiffs allege that the federal court has jurisdiction of the controversy by virtue of federal question jurisdiction, 28 U.S.C. § 1331,[4] and seek to establish the jurisdictional amount by analogizing their position to that of the beneficiaries of a trust fund. Under plaintiffs' theory, welfare recipients and low income persons are the intended beneficiaries of a trust fund created by the State when the State submits and HEW approves a plan. The "res" is composed of the state and federal moneys earmarked for the specific program employing welfare recipients and low-income persons. The fund is to be distributed to those welfare recipients and low-income persons who apply and qualify in competition with other potential beneficiaries. Plaintiffs rely on Berman v. Narragansett Racing Association[5] and Bass v. Rockefeller[6] as

Douglas L. Molde, Vermont Legal Aid, Inc., St. Albans, Vt., for appellants.

David L. Kalib, Asst. Atty. Gen., Montpelier, Vt., for defendants-appellees.

Before MOORE, MULLIGAN and ADAMS *, Circuit Judges.

MOORE, Circuit Judge:

Plaintiffs, Thomas Moore, an individual welfare recipient (ANFC–UF) and the Vermont Welfare Rights Association representing its members, have brought an action against officials of several Vermont social service and personnel departments[1] seeking declaratory and injunctive relief regarding the State's obligations pursuant to provisions of the Social Security Act requiring States to train and use welfare recipients and low-income persons as community service aides.[2] A State plan was submitted to comply with these provisions in 1969 and plaintiffs claim this created a contract between Vermont and the Health, Education and Welfare Department. The District Court granted defendants' motion to dismiss for lack of jurisdiction.

* Of the United States Court of Appeals for the Third Circuit, sitting by designation.

1. The defendants in this action include: the Commissioner of the Vermont Department of Social Welfare, the Acting Commissioner of the Vermont Department of Personnel, and the Commissioner of the Vermont Department of Rehabilitation.

2. The Social Security Act requires States to submit aid "plans" which must be approved by the Secretary of Health, Education and Welfare before federal funds may be used in state categorical assistance. See e. g. 42 U.S.C. § 602(a)–(b) (1970). These plans are required to provide:

. . . for the training and effective use of paid sub-professional staff, with particular emphasis on the full-time or part-time

employment of recipients and other persons of low income, as community services aides, in the administration of the plan . . . 42 U.S.C. Sections 302(a)(5)(B), 602(a)(5)(B), 1202(a)(5)(B), 1352(a)(5)(B), 1396a(a)(4)(B) (1970); 45 C.F.R. Section 225 (1972).

3. Second Amended Complaint.

4. 28 U.S.C. Section 1331(a) provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

5. 414 F.2d 311 (1st Cir. 1969).

6. 331 F.Supp. 945 (S.D.N.Y.), Appeal dismissed as moot 464 F.2d 1300 (2nd Cir. 1971).

support for this "trust fund" approach to jurisdictional amount.

Defendants challenged the jurisdiction of the court below bringing motions, pursuant to Fed.R.Civ.P. 12, to dismiss for failure to state a claim upon which relief may be granted and for failure to demonstrate that the amount in controversy exceeds $10,000., exclusive of interest or costs.

The court granted defendants' motion to dismiss for lack of jurisdiction and therefore did not consider whether plaintiffs had stated a claim upon which relief could be granted. The court found that plaintiffs had not demonstrated $10,000. in damages because damages due to job unavailability are indirect damages " . . . long . . . held . . . too speculative to support jurisdiction under section 1331."[7] The court cited Rosado v. Wyman, 414 F.2d 170, 176–7 (2d Cir. 1969), rev'd on other grounds 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) for the proposition that indirect damages and damages which are too speculative do not support jurisdiction. This principle has traditionally been applied to damages which are intangible or to damages incapable of reduction to monetary terms such as free speech,[8] child custody[9] and loss of personal liberty.[10] See e. g. Kiernan v. Lindsay, 334 F.Supp. 588, 594–5 (S.D.N.Y.1971). We hold that the basis for jurisdiction in this case is not intangible and speculative. Appellants have not cited loss of self-esteem or self-pride or other intangible factors involved in employment as damages but rather the allegations of loss involve the "trust fund" concept.

▮▮▮ Federal courts have consistently held that absolute certainty in valuation of the right involved is not required to meet the amount in controversy requirement but rather the requirement is that there be a reasonable probability of an amount in controversy exceeding jurisdictional amount if an amount can be ascertained pursuant to some realistic formula. See e. g., Lawrence v. Oakes, 361 F.Supp. 432 (D.Vt.1973); Scherr v. Volpe, 336 F.Supp. 882, 885 (W.D.Wis. 1971) aff'd 466 F.2d 1027 (7th Cir. 1972). Conversely, courts should dismiss only when it is clear to a legal certainty that jurisdictional amounts cannot be met. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–9, 58 S.Ct. 586, 82 L.Ed. 845 (1938), Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658 (5th Cir. 1971) on remand 356 F.Supp. 1338, 1341 (M.D.Ala.1973).

▮▮▮ Because of its finding, the court below did not consider the propriety of the "trust fund" approach. We must remand for such consideration as is necessary to allow the district court to make a factfinding determination as to what the amount of that "fund" is, because on the inadequate record, we cannot say to a legal certainty that the amount in controversy does not exceed $10,000.[11] At this point it appears that the original 1969 plan provided for 9 full-time or 24 part-time employees, but we have no indication of the monetary commitment involved. Vermont hired 7 persons in another capacity when the original program terminated, and subsequently a third program involving 16 persons was begun. Under conflicting allegations as to the effect of these various programs on the amount in controversy, remand is proper due to the factual elements of resolving the question of jurisdictional amount. Further questions

---

See related case Bass v. Richardson, 338 F.Supp. 478 (S.D.N.Y.1971).

7. Slip opinion of district court p. 5. Appellant's Appendix A–55.

8. Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir. 1970), cert. denied 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270 (1970).

9. Barry v. Mercein, 46 U.S. (5 How.) 103, 120, 12 L.Ed. 70 (1847); Clifford v. Williams, 131 F. 100 (D.C.1904).

10. Kurtz v. Moffitt, 115 U.S. 487, 6 S.Ct. 148, 29 L.Ed. 458 (1885).

11. Cf. Gibson v. Jeffers, 478 F.2d 216 (10th Cir. 1973).

arise as to how much of the financial burden for the program was taken by the State and how much was to be funded by the federal government. Is the "fund" constituting the amount in controversy limited to the State appropriation? Nor has there been any consideration of whether the amount of the fund should be reduced by the amount of welfare benefits terminated when employment begins. Since the cause is remanded for this threshold factual determination, we also reserve any decision on the validity of the "trust fund" approach outside the class action context.[12] Normally the jurisdictional amount requirement is met by a good faith allegation of the plaintiff. When defendant challenges that amount, plaintiff has the burden of demonstrating the amount. We must remand in this case for a hearing to provide an opportunity for plaintiffs to support their allegation with facts about the financial responsibilities of the State pursuant to its plan and plaintiffs also have the burden of demonstrating the propriety of the "trust fund" approach under the circumstances of this case. *See* Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658, 666–7 (5th Cir. 1971).

Reversed and remanded for further consideration of amount in controversy.

12. The *Bass* trust fund theory has been cited by several courts in various factual circumstances but the majority of cases approving *Bass* or similar jurisdictional amount theory do so where plaintiffs bring class actions. *See,* New Jersey Welfare Rights Organization v. Cahill, 483 F.2d 723 (3d Cir. 1973) (class action challenging State change in AFDC need determination method); Martinez v. Richardson, 472 F.2d 1121, 1125 (10th Cir. 1973) (non-class action where jurisdiction was not challenged at district court level; on appeal, court held that they could not find to a legal certainty that less than $10,000. was in controversy); United Low Income, Inc. v. Fisher, 470 F.2d 1074 (1st Cir. 1972) (class action challenging State termination of AFDC benefits to families with unemployed fathers); Comprehensive Group Health Services Board of Directors v. Temple University, 363 F.Supp. 1069 (E.D.Pa.1973) (two organizations as plaintiffs where each organization has a budget in excess of $10,000.); Yanez v. Jones, 361 F.Supp. 701 (D.Utah 1973) (class action by medically needy attacking medical fee structure used by State employees); Holtzman v. Richardson, 361 F.Supp. 544 (E.D.N.Y. 1973) (jurisdictional amount in non-class action determined from defendant's point of view); Harmony Nursing Home, Inc. v. Anderson, 341 F.Supp. 957 (D.Minn.1972) (nursing home challenges state payment plan); National Welfare Rights Organization v. H. E. W., District Court for Dist. of Columbia, Oct. 16, 1973, No. 73–264 (court refused defendant's motion to dismiss for lack of jurisdiction; "trust fund" approach where plaintiffs sought class action which was not allowed by court in interests of simplicity and justice). *But see* Duffany v. Van Lare, 373 F.Supp. 1060 (N.D.N.Y.1973); New York City Coalition for Community Health v. Lindsay, 362 F.Supp. 434 (S.D.N.Y.1973) (not a class action).