Kenneth J. D'AMATO

v.

**RHODE ISLAND HOSPITAL TRUST
NATIONAL BANK.**

Civ. A. No. 90–0387 P.

United States District Court,
D. Rhode Island.

Sept. 17, 1991.

Robert C. Corrente, Providence, R.I., for plaintiff.

Barbara S. Cohen, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

At the close of plaintiff's case, defendant, Rhode Island Hospital Trust National Bank, made a Motion for Jurisdictional Dismissal under Rule 12(h)(3) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court grants defendant's motion; the above captioned case is dismissed for lack of subject matter jurisdiction.

## BACKGROUND

The facts not in dispute in the above captioned matter are as follows:

Plaintiff, Kenneth D'Amato, had a personal line of credit in the amount of $17,000 with defendant Rhode Island Hospital Trust, a banking institution. On September 14, 1987, plaintiff gave his employer a check, to be drawn on plaintiff's line of credit, which was signed by plaintiff but was otherwise blank. Plaintiff's employer filled in the check in the amount of $37,000 and tendered it ("the D'Amato check"). The following day, plaintiff's employer gave plaintiff a personal check in the amount of $37,000 ("the Brennan check"), presumably to replace the funds borrowed from plaintiff the previous day.

Plaintiff sent the Brennan check to defendant to "cover" the D'Amato check which had been written substantially in excess of plaintiff's available credit. Plaintiff failed to endorse the check, and defendant so notified him and returned the Brennan check to him on September 18, 1987. Accompanying the check was a note from Cheryl Clark, a Hospital Trust employee, to plaintiff stating in pertinent part: "We will hold your PLC check [the D'Amato check] for $37,000 if [the Brennan check] is presented again before Tuesday at 5:00. I can no longer hold the [D'Amato] check after this time." In response, plaintiff immediately endorsed the Brennan check and returned it to defendant through an overnight mail service.

Plaintiff's account was provisionally credited in the amount of $37,000 on September 22, 1987, pending clearance of the Brennan check. Defendant paid the D'Amato check on September 28, 1987. On October 9, 1987, defendant learned that the Brennan check had been twice refused by the bank on which it was drawn on the basis of insufficient funds. As a result, defendant reversed the provisional credit of September 22. Plaintiff's monthly statement from Hospital Trust, rendered on or about October 13, 1987, and received by plaintiff one or two days later, reflected the reversal of the provisional credit.

Subsequent communications between plaintiff and defendant revolved around plaintiff's repayment of the $37,000 owed to defendant as a result of the "bounced" Brennan check. Over the course of the following month or two, plaintiff made periodic payments to defendant, ultimately repaying the entire $37,000 to defendant.

## PLAINTIFF'S ALLEGATIONS

In addition to those facts set forth above, plaintiff has alleged the following:

(1) In failing to stop payment on the D'Amato check immediately after becoming aware that the check was written in an amount far exceeding his credit line, plaintiff was relying on negligent misrepresentations of Cheryl Clark, the defendant's employee. According to plaintiff, when he first explained to Clark that a check had been drawn on his line of credit far in excess of his credit line, she orally represented to him that defendant would not pay the D'Amato check until the Brennan check cleared.

(2) Defendant failed to notify plaintiff seasonably (in compliance with RIGL § 6A–4–212(1)) that the Brennan check was uncollectible, and thus defendant was not entitled to charge-back plaintiff's account for the amount of the Brennan check.

(3) Defendant was negligent in its handling of the Brennan check.

(4) Defendant breached its duty of good faith when its employee, Robert B. Lightfoot, threatened to criminally prosecute plaintiff if he failed to repay defendant $37,000, the amount of the bounced Brennan check.

Based on the above allegations, plaintiff is seeking compensatory damages in the amount of $37,000, plus interest and costs, as well as punitive damages in the amount of $100,000.

At the close of plaintiff's case, defendant moved for dismissal pursuant to Fed. R.Civ.P. 12(h)(3), which states: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." The underlying basis of defendant's motion is that this Court lacks subject matter jurisdiction to decide this case. *See* Fed.R.Civ.P. 12(b)(1).

**1324**

## DISCUSSION

### A. General Jurisdictional Requirements

This case appears in federal court based on diversity jurisdiction. In order for the Court to have subject matter jurisdiction over this case, the amount in controversy must exceed $50,000. 28 U.S.C. 1332(a). Since plaintiff here seeks compensatory damages in an amount less than $50,000, this Court has jurisdiction, if at all, only because plaintiff additionally seeks punitive damages in an amount sufficient to bring his total claim above the $50,000 jurisdictional prerequisite.

### B. Standard for Jurisdictional Minimum

■ Long ago, the United States Supreme Court enunciated a standard for determining whether or not an action meets the monetary minimum required for federal jurisdiction. The court stated:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount.... **But if from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount,** and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (emphasis added).

This standard was applied more recently in this Circuit in *Jimenez Puig v. Avis Rent–a–Car System*, 574 F.2d 37, 39 (1st Cir.1978), and it is the standard this Court must apply today.

■ Normally, the jurisdictional amount requirement is met by the good faith allegation of the plaintiff. "[But w]hen defen-dant challenges that amount, plaintiff has the burden of demonstrating the amount." *Moore v. Betit*, 511 F.2d 1004, 1007 (2d Cir.1975). To overcome this burden, plaintiff must establish his allegations with competent proof. "No presumption of truthfulness attaches to the allegations." *Media Duplication Services, Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1235 (1st Cir.1991).

> If [the plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a **preponderance of the evidence.**

*Zunamon v. Brown*, 418 F.2d 883, 885–86 (8th Cir.1969) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (emphasis added).

### C. Punitive Damages Generally

■ Punitive damages are justified to punish the wrongdoer, not to restore the victim. *Williams v. City of New York*, 508 F.2d 356 (2d Cir.1974). Because of this overriding principle, punitive damages are considered an extraordinary sanction. They are not favored in law and are to be awarded with great caution and within narrow limits. *Lee v. Southern Home Sites Corp.*, 429 F.2d 290 (5th Cir.1970); *See Whitney v. Greater New York Corp. of Seventh–Day Adventists*, 401 F.Supp. 1363 (D.N.Y.1975).

### D. Punitive Damages Under Rhode Island Law

■ "[R]eckless conduct alone does not permit the award of punitive damages in Rhode Island. What is required under Rhode Island law to support a grant of punitive damages is proof that the defendant acted intentionally and maliciously in causing harm to the plaintiff." *Regan v. Cherry Corp.*, 706 F.Supp. 145, 152 (D.R.I.1989). *See also Turks Head Realty*

*Trust v. Shearson Lehman Hutton,* 736 F.Supp. 422, 430 (D.R.I.1990). Intent and malice are not sufficient in and of themselves. "[P]unitive damages are proper only in situations in which the defendant's actions are so willful, reckless, or wicked that they amount to criminality." *Greater Providence Deposit Corporation v. Jenison,* 485 A.2d 1242, 1244 (R.I.1984) (emphasis added).

## ANALYSIS OF PLAINTIFF'S OBJECTIONS TO MOTION TO DISMISS

### A. *"Legal Certainty"*

In argument on defendant's Motion to Dismiss, plaintiff misstated the standard under which this court must evaluate its jurisdiction. "Whether adequate facts exist to support an award of punitive damages is a question of law for the court to decide." *Greater Providence, supra,* at 1244, *citing Sherman v. McDermott,* 114 R.I. 107, 108, 329 A.2d 195, 196 (1974). Plaintiff's arguments notwithstanding, it is not this Court's duty to view the evidence in the light most favorable to the plaintiff. *See* Transcript of Argument, Motion to Dismiss, September 13, 1991, at 19. Plaintiff bears the burden of establishing that the jurisdictional minimum has been met. *Moore, supra,* at 1007. *HDG Software, Inc., supra,* at 1235.

Although plaintiff's pleadings failed on their face to demonstrate any justification for an award of punitive damages, the Court allowed plaintiff to have his day in court. During the pre-trial conference and after the first day of trial testimony, the Court advised plaintiff that jurisdiction seemed questionable. Both times plaintiff assured this Court that the evidence would justify punitive damages and thereby justify jurisdiction.

The evidence offered at trial simply did not bolster plaintiff's pleadings with respect to his claim for punitive damages. From the proof offered, the Court is satisfied to a legal certainty that plaintiff was never entitled to recover punitive damages.

### B. *Defendant's Alleged Threats*

Of the four counts in the complaint, the first three cannot give rise to punitive damages. Negligence and negligent misrepresentation do not reach the high standard of malicious, willful conduct required. The U.C.C. claim, which sounds in contract, similarly does not rise to the level of egregiousness required for punitive damages. *See* Restatement (Second) of Contracts, § 356, comment a. Plaintiff's contention that defendant breached its duty of good faith when its employee "threatened" an FBI investigation remains the only hook from which plaintiff could conceivably hang his punitive damage claim.

Even assuming Mr. Lightfoot "threatened" plaintiff (Mr. Lightfoot does not admit to making any threats), plaintiff's own testimony demonstrates that Mr. Lightfoot did nothing improper. When asked at trial, "Can you tell us what Mr. Lightfoot said to you specifically about the FBI?", plaintiff responded, "... the substance was very clear in his mind I wrote a fraudulent check and the FBI should or would investigate this, if I did not pay the entire sum back to the bank." *See* Trial Transcript at 74.

No one contests Mr. Lightfoot's good faith belief that plaintiff had, in fact, written a fraudulent check. Regardless of how grossly negligent he may or may not have been in threatening plaintiff with criminal investigation, his conduct fell short of willful, malicious, almost criminal behavior. It is more than clear to this Court that plaintiff's allegations concerning the actions of Mr. Lightfoot and defendant Hospital Trust are insufficient to allow a jury to consider punitive damages.

## ORDER

Plaintiff's allegations in support of punitive damages are insufficient for jury consideration. Without the punitive damages claim, this Court lacks subject matter jurisdiction over the remaining claims for $37,000. Accordingly, this Court grants defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

SO ORDERED.