Forrest BALL

v.

HERSHEY FOODS CORPORATION.

Civ. No. 3:91CV0661(AVC).

United States District Court,
D. Connecticut.

June 3, 1993.

for three months and paid $250 per day of work. At the end of each month, the plaintiff submitted a voucher listing days worked and projects on which he worked. Cadbury paid all vouchers promptly.

From February through April of 1988, at the behest of Michael McDonald, another Cadbury employee, the plaintiff spent some time working on two advertising ideas. The plaintiff's first idea was called "Tigers' Clubhouse," and involved children pictured with boxes of Cadbury bars to sell to raise money to buy baseball uniforms. The plaintiff's second idea, entitled "Tea Party," pictured five little girls dressed up, having a tea party at which they ate Cadbury bars. Also at the table was a pet dog wearing a doll's bonnet. The plaintiff called these two advertising concepts "Cadbury Kids." The plaintiff hired an artist to sketch his ideas and gave the sketches to McDonald. Cadbury paid the artist his fee for creating the sketches. Cadbury never used the plaintiff's ideas and returned the sketches to the artist. In addition, during March and April 1988, Cadbury paid the plaintiff in full for vouchers including time he indicated that he had spent working on these ideas. Nevertheless, McDonald orally promised the plaintiff that if Cadbury ever used the plaintiff's "Cadbury Kids" ideas that the plaintiff would "participate in its planning and implementation and would be compensated accordingly."

In May 1988, Garcia told the plaintiff that Cadbury no longer needed the plaintiff's services and terminated his employment. In August 1988, the defendant, Hershey Foods Corporation, purchased some assets of Cadbury USA.

The plaintiff has never had any contact with the defendant's advertising agency, Ogilvy and Mather. Since 1969, Ogilvy and Mather has created advertising for the defendant. In 1987, Ogilvy and Mather produced an advertising campaign for Hershey Miniatures candy product. The campaign

Thomas G. Parisot, Secor, Cassidy & McPartland, P.C., Waterbury, CT, for plaintiff.

Forrest Ball, pro se.

Richard F. Orr, Mark V. Connolly, Glory Martyn Lena, Tyler Cooper & Alcorn, Hartford, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for the alleged misappropriation of an idea in which the plaintiff claims that the defendant wrongfully adopted and used the plaintiff's novel idea without remuneration. The defendant argues that it did not use the plaintiff's idea, but rather developed the television advertisement at issue independently in conjunction with its advertising agency. In the court's April 22, 1993, *suo moto* order, the court raised the issue of whether it had jurisdiction over this matter. The issues presented, therefore, are (1) whether the amount in controversy exceeds $50,000, as required in diversity jurisdiction, and (2) whether the defendant created its advertisement independent from the plaintiff's idea. The court concludes that it has jurisdiction in this matter and it agrees with the defendant's assertion of independent creation. The defendant's motion for summary judgment is, therefore, granted.[1]

### FACTS

In November 1987, the plaintiff entered into a written "Consulting Agreement" (Agreement) with Cadbury USA[2], under which the plaintiff was to advise Cadbury on the packaging of its candy products. In carrying out the Agreement, the plaintiff reported to one John Gabriel and one Ted Garcia, Cadbury employees. Under the Agreement, the plaintiff was to be employed

---

1. The plaintiff has also alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. § 42–110b. Since this claim rests entirely on the same allegations made by the plaintiff in his claim of misappropriation of an idea, the granting of the motion for summary judgment applies to the CUTPA claim as well.

2. The defendant later purchased some of the assets of Cadbury USA.

consisted of two television commercials in family settings. The theme of the campaign was that Hershey Miniatures, consisting of a single package containing many small candy bars in four varieties, could please the different tastes of each family member. These commercials aired from 1987 through 1989. In August 1988, Ogilvy and Mather recommended to the defendant that a new commercial of this series be developed and offered to begin work immediately. The defendant agreed.

Early in 1989, one Charlie Armstrong and one Martha Constable of Ogilvy and Mather developed two new commercials for Hershey Miniatures and on April 7, 1989, presented them to Robert Holmes, a Brands Manager for the defendant. One of these was called "Hostess." [3] In the Hostess commercial, a little girl dressed up in adult clothes holds a tea party for her toys. Sitting at the table with her are a stuffed bear and elephant, and a doll. She serves them each a different Hershey Miniature candy, commenting on how each one likes a different kind. Holmes selected this commercial to be further developed and completed because it stressed the theme that Miniatures satisfy many different tastes. Armstrong and Constable continued work. In August 1989, they filmed the commercial.

Neither Armstrong nor Constable ever met or spoke with the plaintiff or McDonald, and never discussed the Hostess idea with anyone prior to their April 1989 presentation to Holmes. They never saw the plaintiff's artist's work until after the plaintiff commenced litigation. Although McDonald states that he mentioned the "Cadbury Kids" concept to various individuals employed by the defendant, he does not state that he discussed it with Holmes or others on the project. Holmes states that he never knew of the plaintiff's concept until after the filming of the Hostess commercial.[4]

In September 1989, one month after the commercial had been filmed, the plaintiff, on his own initiative, arranged to meet with the defendant's packaging department. At that meeting he presented to them many of his advertising ideas, including "Cadbury Kids." This was when Holmes first became aware of the plaintiff's ideas.

The Hershey Hostess commercial began to air in 1990.

## STANDARD

■ Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. den.*, — U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### 1. JURISDICTION

The plaintiff originally filed this action in state court alleging that the amount in controversy satisfied that court's minimum re-

---

**3.** The other proposed commercial was entitled "Dominoes," and was not developed further after this meeting.

**4.** Holmes also stated that no person at the April 7, 1989, meeting with Armstrong and Constable referred in any way to any of the plaintiff's work. Armstrong and Constable corroborate this statement.

quirement of $15,000. The defendant thereafter removed the action to this court. Because it was not clear to the court that the amount in controversy was sufficient to meet the $50,000 minimal requirement of diversity jurisdiction cases, 28 U.S.C. § 1332, the court ordered the parties to submit briefs on this issue.

■ Although the party invoking the jurisdiction of the federal court bears the burden of showing that the requisite amount is actually at issue; *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979); this burden is not a heavy one. *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir.1975).

> If there is a reasonable possibility that the plaintiff can recover more than $[5]0,000 on his claim, the jurisdictional minimum is satisfied.

*Ross v. Inter–Ocean Ins. Co.*, 693 F.2d 659, 663 (7th Cir.1982).

■ In this case, the defendant has met its burden by alluding to the plaintiff's deposition, in which he stated that his concept might be worth $40,000 or that it might be worth $200,000 or $400,000. The plaintiff is also seeking an award of attorney's fees under C.G.S. § 42–110g. Since the court may take attorney's fees into account when determining the amount in controversy, there is a "reasonable possibility" here that the amount in controversy exceeds $50,000. The court, therefore, has jurisdiction over this matter.

## 2. MISAPPROPRIATION OF AN IDEA

The plaintiff first claims that he had an implied-in-fact contract with the defendant pursuant to which the defendant would pay the plaintiff compensation should the defendant ever use the plaintiff's "Cadbury Kids" concept,[5] and that the defendant did use the plaintiff's novel tea party idea. The defendant argues that there was no contract or relationship of any kind between it and the

plaintiff, and that the plaintiff's tea party idea was not novel. The defendant also argues that, in any event, its advertising agency created the tea party commercial independently from the plaintiff and his ideas.

Connecticut courts have not yet decided a case concerning the misappropriation of an idea.

> When confronted with an issue of unsettled state law, a federal court "must do its best to guess how the state court of last resort would decide the issue." In making this determination, the federal court is not bound by decisions of lower state courts, although it must give such decisions "proper regard." Finally, it is entirely proper for the federal court to exercise its own judgment in interpreting state law where neither the state's highest court nor the state's appellate court has spoken. Given the complete absence of state court authority on the issues in dispute here, it is appropriate for this court to exercise its own judgment in determining what the Connecticut Supreme Court would decide if it considered these issues.

*Sternberg v. Zuckerman*, 821 F.Supp. 841 (D.Conn.1993) (citations omitted).

■ There is a clear consensus among courts that have considered this issue that the elements of a claim for misappropriation of an idea are: (1) a legal relationship must exist between the parties, and (2) the idea must be novel and concrete. *McGhan v. Ebersol*, 608 F.Supp. 277, 284 (D.C.N.Y. 1985). It is an affirmative defense to such an action that the defendant created the idea independently from the plaintiff. *Kienzle v. Capital Cities/American Broadcasting Company, Inc.*, 774 F.Supp. 432, 436 (E.D.Mich. 1991).

The court finds that the plaintiff has failed to establish a legal relationship between himself and the defendant. The court also finds that the plaintiff's tea party concept was not

---

5. Assuming arguendo that there was a contract between the plaintiff and the defendant, it could not have been as broad as the plaintiff alleges. According to McDonald, through whom any implied in fact contract would have to have sprung, "it was understood that if this concept was to be used ... [the plaintiff] would participate in its planning and implementation and would be compensated accordingly." Thus, any contract would have been for the plaintiff to be re-hired by Cadbury, or later Hershey, to work on the project. Indeed, this interpretation is supported by the plaintiff's own action of visiting the defendant, promoting his "Cadbury Kids" concept, and seeking a new contractual relationship with Hershey as a "Graphic Arts Consultant."

novel. The court concludes that, even had the plaintiff succeeded in establishing a legal relationship and the novelty of his idea, the defendant has successfully asserted the defense of independent creation. Because the court concludes that the defendant's assertion of its affirmative defense is dispositive, the court will limit its discussion to that topic.

■ A defendant may assert the defense of independent creation in at least two ways. First, the defendant may show that it lacked access to the plaintiff's idea and, therefore, could not have copied it. Second, the defendant may show that its idea and that of the plaintiff were dissimilar, thereby precluding an inference that the defendant copied the plaintiff's idea. *See Kienzle, supra* at 437; *cf. In re Elsinore Shore Associates,* 102 B.R. 958, 971 (D.N.J.1989). In this case, the defendant has done both.

■ The defendant has submitted uncontradicted evidence that it and its agency did not have access to the plaintiff's idea when they created the defendant's commercial. Both Holmes, the employee of the defendant in charge of the commercial's production, and Armstrong and Constable, the agency's employees who actually created the commercial, stated unequivocally that they neither knew of the plaintiff or of his tea party idea, nor had they seen any of the plaintiff's written materials or art work prior to the completion of the defendant's commercial. Although some of the defendant's employees may have seen the plaintiff's work, the plaintiff has presented no evidence calling into question the clear evidence that no such person was in any way involved in the production of this commercial.

Although not as strong as the "lack of access" argument, the defendant has also established the affirmative defense by the second means. Even though both the plaintiff's tea party idea and the defendant's commercial concern a little girl having a tea party, the details of the two ideas and, more importantly, the themes of the two ideas, are very different. In the plaintiff's tea party, there are five little girls, each of whom is eating a candy bar, and there is a pet dog also at the table. In the defendant's com-

mercial one little girl is present. She hosts a party for her toys and the toys are supposed to eat the candy, each receiving a different kind of candy bar. The theme of the plaintiff's idea is children enjoying candy bars. The theme of the defendant's commercial is the same theme that has been used in its commercials for the preceding two and a half years, i.e., Hershey Miniatures can satisfy a variety of individual tastes. All of these differences between the two ideas preclude the inference that the defendant used the plaintiff's idea. As the court stated in *Elsinore, supra* at 971,

> [S]imilarities between the submissions and the ultimate product may justify the factual inference that one was copied from the other.... If the concept submitted is unique, or if there are many points of likeness, the inference is strengthened. On the other hand, a lack of novelty or the existence of many dissimilar features will support a denial that the idea was used by the recipient.

### CONCLUSION

The court concludes, therefore, that the evidence amply establishes that the defendant created its advertisement independently and did not misappropriate the plaintiff's idea.

Accordingly, the defendant's motion for summary judgment (document no. 34) is granted.

SO ORDERED.