Willie McLEAN, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

David MATHEWS, in his capacity as Secretary of the United States Department of Health, Education and Welfare, W. J. Usery, Jr., in his capacity as Secretary of the United States Department of Labor, Phillip Ross, Individually and in his capacity as Industrial Commissioner of the New York State Department of Labor, and Stephen Berger, Individually and in his capacity as Commissioner of the New York State Department of Social Services, Defendants.

No. 76 Civ. 1572.

United States District Court,
S. D. New York.

May 19, 1976.

The Legal Aid Society of Westchester County by Steven A. Hitov, New Rochelle, N. Y., for plaintiff.

Robert B. Fiske, Jr., U. S. Atty. by Walter S. Mack, Jr., Louis J. Lefkowitz, Atty. Gen. of State of N. Y. by Mark C. Rutzick, New York City, for defendants.

## MEMORANDUM

STEWART, District Judge:

Plaintiff, Willie McLean, brings this action on behalf of himself and others,[1] seeking to enjoin the enforcement of certain federal and state regulations, promulgated under the Work Incentive Program ["WIN"] of the Social Security Act ["SSA"], 42 U.S.C. § 601 et seq. Named as defendants are David Mathews, the Secretary of Health, Education and Welfare ["HEW"], W. J. Usery, Jr., the Secretary of Labor, [the "federal defendants"], Phillip Ross, the Industrial Commissioner of the New York Department of Labor, and Stephen Berger (then) Commissioner of the New York Department of Social Services ["the state defendants"].

Plaintiff claims that both federal and state regulations, [See 29 CFR § 56.50, 29 CFR § 56.51, and 29 CFR § 56.77 and 18 NYCRR § 388.9(a) and (d), set forth in Appendix A], which deregister, for fixed time periods, individuals who have failed, without good cause, to participate in the WIN program, conflict with express provisions of the SSA [specifically, 42 U.S.C. § 602(a)(19)(A) and 42 U.S.C. § 602(a)(19)(F), set forth in Appendix B] and with the intent of the legislation as expressed in 42 U.S.C. § 630 [See Appendix C]. Plaintiff also asserts that, by establishing fixed time period sanctions, the regulations create an unconstitutional irrebuttable presumption as to the duration of an individual's failure to participate without good cause. Plaintiff seeks a declaration that

---

1. The question of the propriety of class certification has been postponed until after a determination of the preliminary motions seeking injunctive relief and raising jurisdictional questions.

the regulations violate his rights under both the SSA and the constitution and asks for preliminary and permanent injunctive relief, prohibiting the enforcement of the regulations.[2]

The federal defendants, arguing against plaintiff's motion for preliminary relief, assert that this court is without jurisdiction over plaintiff's claims. Similarly, the state defendants have filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("F.R.Civ.P."). We consider these jurisdictional questions before we turn to plaintiff's motion for preliminary relief.

Plaintiff asserts that this court has jurisdiction, pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 1331, and 5 U.S.C. § 701–§ 704 over the federal defendants. We agree with plaintiff that 28 U.S.C. § 1361 provides us with jurisdiction to hear his claims. Plaintiff asserts that defendants Mathews and Usery have a non-discretionary ministerial duty to issue regulations which do not conflict with the statutory provisions of the SSA. Plaintiff finds such an obligation in the language of 42 U.S.C. § 1302, which states that the Secretaries of HEW and Labor

> "shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the effi-

cient administration of the functions with which each is charged under this chapter."

Plaintiff claims that the regulations quoted above conflict with statutory provisions in the chapter and are thus promulgated in violation of § 1302. As § 1302 does establish a statutory obligation to regulate consistently with the chapter, and as mandamus is a proper remedy for breach of such a duty,[3] we conclude that plaintiff has made a sufficient showing of § 1361 jurisdiction to permit us to proceed to the merits of plaintiff's claim. We note that our conclusion as to jurisdiction is not a decision of the merits but only permits us to consider whether the interpretation of the statute urged upon us by plaintiff is correct.[4] *See Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) and *Mattern v. Weinberger*, 519 F.2d 150, 156–157 (3d Cir. 1975), appeal pending —— U.S. —— (1976).

Plaintiff also asserts that we have jurisdiction over the federal defendants under 28 U.S.C. § 1331. As the cause of action clearly arises under the laws of the United States, the principal controversy between the parties as to the viability of § 1331 jurisdiction is whether the $10,000 jurisdictional amount has been met. Plaintiff claims that he, and the class he seeks to represent, share a common interest in the distribution of a single fund, the state welfare monies, which exceeds $10,000. *See, e. g. Bass v. Rockefeller*, 331 F.Supp. 945 (S.D.N.Y.1971), *vacated as moot*, 464 F.2d 1300

---

**2.** A three judge court is not required because the issues before us are decided on the basis of plaintiff's statutory claims. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) and *Wisdom v. Norton*, 507 F.2d 750, 757 (2d Cir. 1974), petition for rehearing denied, 520 F.2d 938 (2d Cir. 1975).

**3.** *See Economic Opportunity Commission of Nassau County v. Weinberger*, 524 F.2d 393 (2d Cir. 1975), *Leonhard v. Mitchell*, 473 F.2d 709 (2d Cir. 1973), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002 (1973), and *National Rights Welfare Organization v. Weinberger*, 377 F.Supp. 861 (D.D.C.1974).

**4.** We note that, if we were to agree with the federal defendants that we had no jurisdiction under § 1361, we would be determining the merits of plaintiff's claim under the guise of a

jurisdictional discussion. We do not believe that the examination of these claims constitutes an untoward judicial intrusion into administrative discretion. If we find that any matter has been committed by Congress to the discretion of an administrative agency, we are no longer faced with a question of a non-discretionary duty owed by defendants to plaintiff and § 1361 jurisdiction can no longer suffice as a jurisdictional basis for plaintiff's claims. We believe our holding is fully consistent with the legislative history of § 1361 [See Senate Report No. 1992, August 31, 1962, for P.L. 87–748 § 1(a), Oct. 5, 1962, reported in 1962 U.S.Code & Admin.News at p. 2784], for plaintiff is seeking "no more than lawful treatment" from his government. 1962 U.S.Code Cong. & Admin. News, at p. 2785.

(2d Cir. 1971). *See also Moore v. Betit,* 511 F.2d 1004 (2d Cir. 1975).

Defendants dispute the applicability of the "common trust" theory to the present action and argue that certain elements necessary to find a "trust" are not present. As we have already found jurisdiction under § 1361, and as we have deferred class determination,[5] we believe that it is proper not to decide the applicability of the *Bass* doctrine at this point. Similarly, we decline to decide whether the Administrative Procedure Act, ("APA") 5 U.S.C. § 701 *et seq.,* also urged by plaintiff as a jurisdictional basis, provides an independent source of jurisdiction. We note that the law on this question is unsettled but that some district courts within this circuit have premised jurisdiction upon the APA. *See generally Aguayo v. Richardson,* 473 F.2d 1090 (2d Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974) and cases cited therein. *See also Sanders v. Weinberger,* 522 F.2d 1167 (7th Cir. 1975) and *Ortego v. Weinberger,* 516 F.2d 1005 (5th Cir. 1975).

Turning to the state defendants, we find jurisdiction is proper under the theory of pendent jurisdiction.[6] *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Here, the federal and state claims arise from the same factual setting and involve the same legal question—whether deregistration from the WIN program for a fixed time period is a sanction permitted under the SSA. In making the determination of whether the federal regulations are consistent with the Act, we will necessarily implicate the validity of the state regulations.[7] Thus, it is appropriate to consider the questions of the validity of the federal and the state regulations together.

New York State, arguing against the discretionary exercise of pendent jurisdiction, asserts that it has independent legislative authority to issue regulations which are complementary to the federal law and that, even if we were to find the federal regulations unlawful, the state regulations may still stand. *See New York Dept. of Social Services v. Dublino,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). Assuming that the New York regulations must be considered separately from the federal regulations, declining to permit pendent jurisdiction here would we believe, unjustifiably tax both the parties and the courts.[8] *See Astor-Honor Inc. v. Grosset & Dunlop, Inc.,* 441 F.2d 627, 629–630 (2d Cir. 1971).

Finally, we note that here we have decided to permit both claim and party pendency, a decision sanctioned by this circuit in *Almenares v. Wyman,* 453 F.2d 1075 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).

█ Because we find jurisdiction over the federal defendants pursuant to 28 U.S.C. § 1361 and jurisdiction over the state defendants under the doctrine of pendent jurisdiction, we deny defendants' motion to dismiss for lack of jurisdiction. We also deny the state defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Taking the allegations of the complaint as true [*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)], plaintiff has set forth sufficient facts and raised substantial legal claims to require this court to consider the merits of his claim.[9]

---

5. Most decisions relying upon the *Bass* doctrine do so in the context of a class action. *See* n. 12, *Moore v. Betit, supra,* 511 F.2d at 1007 and accompanying text.

6. We do not reach the applicability of the other jurisdictional bases, 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331, urged by plaintiff.

7. The language of the two sets of regulations is substantially parallel. See Appendix A.

8. This is not a situation in which we are presented with any special reason for exercising our discretion to disallow the pendent claims.

9. Defendants have also raised a question as to the justiciability of plaintiff McLean's claim. Defendants assert that an evidentiary hearing is required to determine whether McLean could have been found by the Secretary of Labor to have failed to participate, without good cause, in the WIN program for longer than the six

Turning now to plaintiff's motion for preliminary injunctive relief,[10] a more complete explanation of the factual setting of this action is required. Willie McLean and his family receive benefits under New York State's Aid to Families with Dependent Children ("AFDC") program. Registration in the WIN program is a condition of eligibility in the program. In 1974, McLean complied with this requirement and registered with the WIN program. However, later in that year, the Secretary of Labor made a determination that McLean had failed, without good cause, to participate in WIN. The sanction of a 90-day deregistration (as described in 18 NYCRR 388.9 and in 29 CFR § 56.50 and § 56.51) was imposed and the McLean family's AFDC allotment was reduced by the amount of Willie McLean's proportionate share.

In July of 1974, McLean re-registered with the WIN program; later that year he received further sanctions after he had been found to have refused to participate without good cause.[11] The instant action arises out of the imposition on December 5, 1975, of the six month deregistration, pursuant to 18 NYCRR § 388.9(a) and (d) and 29 CFR § 56.77(a). As a result of this sanction, the McLean family's AFDC grant has been reduced from $264.80 to $212.60. *See* 18 NYCRR § 388.9(d)(3).

McLean premises his claim that the fixed time periods of deregistration violate the SSA upon two sections of the statute. First, quoting the legislative "Statement of purpose" at 42 U.S.C. § 630,[12] McLean argues that the stated intent of Congress to permit an individual to "acquire a sense of dignity . . . as a wage-earning member of society," requires that an individual not be excluded from eligibility in WIN for fixed time periods. Secondly, plaintiff quotes the language of 42 U.S.C. § 602(a)(19)(F), which states that:

> "if *and for so long as* any . . . individual . . . has been found by the Secretary of Labor . . . to have refused without good cause to participate . . . or to have refused without good cause to accept employment [that individual's] . . . needs shall not be taken into account in making the determination . . . [of the family's AFDC benefits]".[13] (emphasis added).

McLean claims that the phrase "if and for so long as" limits administrative discretion under the Act; McLean argues that the only sanction authorized by the statute is one which corresponds directly with the time period in which an individual refuses to participate.[14] Under plaintiff's reading

month sanction period. Defendants argue that, if the Secretary of Labor could have made such a finding, plaintiff has not suffered a cognizable legal injury by the application of the challenged regulations to him and thus lacks standing to contest those regulations validity.

We disagree and decline to engage in the speculation which defendants urge. The standing of a plaintiff does not rest upon hypothetical facts [*O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)] but upon allegations of concrete injury. Here, the named plaintiff has himself been deregistered and has thus suffered "some threatened or actual injury resulting from the putatively illegal action . . ." of defendants [*Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations omitted)]. McLean has presented a sufficiently personalized injury to invoke the federal court's jurisdiction. Thus, we decline to dismiss the lawsuit on justiciability grounds. We note that this decision as to plaintiff's standing is not a determination of the propriety of McLean's serving as class representative, a question which we have deferred for the present.

**10.** Because of the parties' urgings, this court has not consolidated the hearings on the preliminary injunction with the trial of the merits. F.R.Civ.P. 65(a)(2). See transcript of hearing of May 4, 1976.

**11.** Apparently, McLean missed a series of interviews with his local WIN office and some job interviews which had been arranged through the WIN program.

**12.** See Appendix C.

**13.** 42 U.S.C. § 602(a)(19)(F) is set forth in full in Appendix B.

**14.** Plaintiff does not argue that the Secretaries of HEW and Labor and the New York State agencies are without power to impose any sanctions upon persons who refuse, without good cause, to participate. Rather, McLean contends that the defendants have no authority to exclude otherwise eligible individuals from

of the statute, the regulations establishing the fixed 90-day and 6 month exclusionary periods conflict with both the express legislative purpose and the statutory language of § 602(a)(19)(F) and are therefore invalid. Claiming irreparable harm from imposition of the sanction, McLean seeks a preliminary injunction prohibiting enforcement of the regulations.[15]

Defendants vigorously dispute plaintiff's argument that the Act only permits sanctioning an individual during the period in which that person refuses to participate. Turning initially to 42 U.S.C. § 633(g), § 639, and § 1302,[16] defendants argue that the Secretaries of HEW and Labor are invested with broad discretion to implement WIN. Defendants contend that the contested regulations provide reasonable sanctions, consistent with the legislative intent for the program. Further, the federal defendants submit that the language of § 602(a)(19)(F), which appears in a section of the statute describing the application of WIN to state AFDC plans, would be taken out of context if read to limit their discretion. The state defendants also argue that plaintiff misinterprets both the scope of discretion permitted under the statutes and the language of § 602(a)(19)(F). The state defendants believe that it is equally reasonable to read that section as permitting the Secretary to bar a registrant indefinitely once the Secretary has found a wilful failure to participate. In sum, defendants all argue that the penalty provisions function as important incentives and are administratively efficient mechanisms to fulfill the legislative intent of having WIN participants develop a sense of self-worth as wage-earning members of our society.

■ We are presented with this question of legislative intent and statutory interpretation on plaintiff's application for preliminary injunctive relief. Thus, we do not decide who will ultimately prevail on the merits of the claim, but only whether plaintiff has made

"a clear showing of either (1) probable success on the merits *and* irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardship tipping decidedly" in his favor. (emphasis in the original). *Gresham v. Chambers,* 501 F.2d 687, 691 (2d Cir. 1974) (citations omitted). *See also Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115 (2d Cir. 1975) and *Aquayo v. Richardson, supra,* 473 F.2d at 1112.

In the instant action, we evaluate plaintiff's claims under the second test.

Turning first to the strength of plaintiff's legal arguments, we do not agree at this juncture that the deregistration penalties contravene the legislative intent expressed in 42 U.S.C. § 630. Section 630 states that WIN was passed to establish a job training program and to provide incentives and opportunities for AFDC recipients to be employed. Plaintiff claims that this purpose is violated when an otherwise eligible and willing person is precluded from participation in the training programs as a result of deregistration. When an individual is deregistered, his or her needs are disregarded

---

participation in the program. Plaintiff believes that Congress has authorized the defendants to disregard the recalcitrant individual's needs for the time period in which he or she has been found to have failed to comply with the requirements of WIN.

For example, if an individual has been found to have failed to participate for 44 days, his or her needs for a subsequent period of 44 days would be excluded from that family's AFDC grant. However, during those 44 days, the sanctioned individual could still participate in WIN and utilize its services to gain training for and to find employment.

In response to defendants' argument that non-standardized time periods would impose overwhelming administrative burdens which would preclude efficient operation of the program, plaintiff claims that the forms already utilized by the Secretaries in finding non-participation [See WIN form # 412, Exhibit B of Plaintiff's complaint] could be relied upon to compute the periods in which lawful sanctioning could be imposed.

**15.** McLean only seeks preliminary relief for himself. He does not ask this court to enjoin the enforcement of the regulations as they are applied to his proposed class.

**16.** See Appendix D.

from a family's AFDC grant. In addition, that individual is prevented from receiving any other WIN benefits, including job-training, counseling, and job-referral services. Although deregistration is not explicitly authorized by the Act, while the sanction of a decrease in the AFDC grant is specifically set forth, the Act does expressly delegate rulemaking power to the federal defendants. 42 U.S.C. § 639 and § 1302. Given this grant of authority, plaintiff has not yet shown that deregistration, the penalty chosen by the Secretaries, is inconsistent with the furnishing of incentives to AFDC recipients to propel them into the work force. Rather, the potential loss of access to job-training and job placement opportunities which results from deregistration may serve as a deterrent for those who would refuse to participate.[17] Thus, although we understand plaintiff's argument that an individual who is so sanctioned under the regulations is precluded from the very benefits which Congress hoped would function as positive incentives to becoming a wage-earner, we do not believe that the creation of negative incentives is beyond the discretionary powers which Congress invested in the Secretaries of HEW and Labor.[18] Therefore, on the issue of whether plaintiff has shown sufficiently serious questions going to the merits, we conclude that plaintiff has not made a clear showing based upon the overall legislative purpose of WIN to entitle him to preliminary relief.[19]

■ The second basis for plaintiff's claim that the Act does not permit deregistration as a penalty is § 602(a)(19)(F). Here, plaintiff has raised sufficiently serious questions going to the merits of the interpretation of the phrase "if and for so long as" to meet the test for preliminary relief of *Gresham, supra.*

In interpreting statutory language, a court is instructed to give words their ordi-

---

17. "That some other remedial provision might be preferable is irrelevant." *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 371, 93 S.Ct. 1652, 1662, 36 L.Ed.2d 318 (1973).

18. As the regulations do not provide for the permanent disqualification of an individual which the state defendants argue is permissible under the Act, we do not reach the question of whether the Secretaries of HEW and Labor have the discretion to permanently exclude an individual from WIN participation.

19. We are mindful that the question of eligibility for welfare funds is of great importance; "once the federal standard of eligibility is defined, a participating State may not deny aid to persons who come within it in the absence of a clear indication that Congress meant the coverage to be optional." *Burns v. Alcala,* 420 U.S. 575, 580, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975). *See also Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975), *Van Lare v. Harley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), *Lascaris v. Shirley,* 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975), *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972), *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), *Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), and *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Similarly, the federal agencies designated to implement SSA programs cannot impose eligibility requirements greater than those mandated by Congress. *King v. Smith,*

*supra,* n. 34, 392 U.S. at 333, 88 S.Ct. 2128. *See also Woolfolk v. Brown,* 393 F.Supp. 263, 278 (E.D.Va.1975).

Here, the defendants have not enlarged the eligibility requirements but have, for limited time periods, excluded eligible persons from the program. However, we are not convinced at present that this penalty violates the intent of Congress. As described by the Supreme Court, which discussed WIN in *New York Department of Social Services v. Dublino,* 413 U.S. 405, 411, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), Congress made "cooperation in WIN . . . necessary for employable individuals to continue to receive assistance." ". . . *[A]ctual* refusal to participate [is] a permissible ground for denying assistance." (emphasis in original). *Dublino, supra,* 413 U.S. at 426, 93 S.Ct. at 2519 (J. Marshall, dissenting). Thus, Congress was clearly aware that some persons might attempt to avoid participating in WIN and, as all the parties before us here agree, Congress did authorize some punitive measures.

Thus, while we recognize that a decrease in AFDC benefits, the only sanction explicitly authorized by the statute, can be distinguished from deregistration, plaintiff has not made sufficient preliminary showing that the Secretaries' creation of time periods of deregistration exceeds the authority delegated to them. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

nary meaning. *Wisdom v. Norton,* 507 F.2d 750, 753–754 (2d Cir. 1974), petition for rehearing denied, 520 F.2d 938 (2d Cir. 1975). While the interpretation given to statutes by the agencies entrusted with their operation is given considerable weight, [*Dublino, supra,* 413 U.S. at 421, 93 S.Ct. 2507], agency readings cannot supersede the language of the Act. *Wisdom v. Norton, supra,* 507 F.2d at 756.

Defendants, in arguing against plaintiff's plain sense reading of § 602(a)(19)(F) have not presented arguments which defeat the seriousness of the issues raised. The state defendants' alternative reading of the language, which would permit permanent deregistration as a sanction, raises the possibility that the penalty would alter the eligibility requirements established by Congress and is thus not as reasonable an interpretation as plaintiff's. The federal defendants argue that § 602 deals with the requirements for state AFDC programs and thus does not apply directly to them nor limit their discretionary powers. However, WIN is implemented by its relationship to state AFDC programs. Thus, we do not conclude that the fact that the words appear in a section entitled "State plans for aid and services to needy families with children; contents; approval by Secretary" renders them inapplicable to the federal defendants.

Other arguments advanced by defendants also do not defeat the gravity of plaintiff's claim. The federal defendants turn the court's attention to other language within § 602(a)(19)(F), which provides that a person who would otherwise be subject to sanctions may have a reprieve from the imposition of the penalty if he or she accepts 60 days of counseling. Defendants argue that the 60 day counseling option would be rendered meaningless under plaintiff's reading

of the Act. We do not agree that the 60 day counseling provision has any bearing upon the type of sanction allowed by the statute. Congress may well have provided that the penalty of a decrease in an AFDC allotment, rather than deregistration, could be avoided by voluntary agreement to participate in counseling.[20] The defendants also contend that if plaintiff is accurate in his reading of the Act, the administrative burden would be enormous. However, administrative convenience cannot override statutory requirements.[21]

Turning to the second element of the test of whether a preliminary injunction should issue, we find that plaintiff has established that the present harm to him is grave while the hardships imposed upon defendants by the grant of injunctive relief is slight. Plaintiff's family's AFDC grant has been decreased, so that his family of four is given $212.60 on which to live for the month. In addition, plaintiff's access to food stamp and medicaid benefits have been affected by the imposition of the WIN sanction. [See Plaintiff's Reply Memorandum, pp. 12–15]. Thus, McLean's ability to purchase food, pay for shelter, and meet the monetary requirements for living is substantially impaired by the imposition of the arguably unlawful penalty. Such daily needs cannot be compensated by an award of monetary relief at the end of this litigation. In contrast, New York State's coffers will not be greatly harmed by their monthly payment to McLean of the $52.50. Under these circumstances, we find that the balance of hardships tips decidedly in favor of plaintiff.[22]

In summary, we grant plaintiff's application for preliminary injunctive relief and we deny defendants' motion to dismiss.

SO ORDERED.

---

**20.** While we do not at present see how the 60 day counseling period applies to the issue before us, defendants are welcome to more fully inform the court of its import.

**21.** Defendants have failed to demonstrate any overwhelming administrative burden imposed by plaintiff's interpretation, and plaintiff has advanced many arguments as to both the administrative possibilities and the present realities so as to persuade us that his interpretation

is not functionally impossible. *Compare Mourning v. Family Publications Service, Inc., supra,* 411 U.S. at 370, 93 S.Ct. 1652.

**22.** As indicated above, plaintiff has not requested and we do not enjoin the enforcement of the regulations generally but only as they are applied to McLean who has made satisfactory showing of his personal harm so as to support the grant of injunctive relief.

## APPENDIX A

29 CFR § 56.50 provides:

### Subpart F—Deregistration and Sanctions

### § 56.50 Deregistration

(a) All deregistrations shall be performed by the WIN sponsor.

(b) A deregistration is necessary when an individual is held to have refused to participate without good cause; an incorrect non-exemption determination has been made; or an individual becomes exempt. Deregistration is also necessary when an individual becomes ineligible for AFDC except in the case where he is participating in the PSE or OJT components or is employed and receiving WIN-funded supportive services.

(c) The welfare agency shall notify the WIN sponsor of any change which will affect an AFDC recipient's welfare or exemption status in such a way as to warrant deregistration.

(d) Except in those cases where the WIN sponsor has been notified that an AFDC grant has been discontinued for reasons involving other than WIN program issues the WIN sponsor shall notify the IMU of all deregistrations.

(e) Any WIN registrant, except a volunteer, who is determined to have failed or refused without good cause to appear for appraisal; or any certified WIN registrant, except a volunteer, who after counseling has been offered, continued to refuse to participate in the WIN program without good cause shall be deregistered from WIN and removed from the AFDC grant for failure to participate.

(f) Volunteers who withdraw from the WIN program shall be deregistered.

(g) Volunteers who are found to refuse to participate after notice and an adverse hearing decision, if a hearing is requested, shall be deregistered.

29 CFR § 56.51 provides:

### § 56.51 Sanctions.

A State plan under title IV–A of the Act shall provide that:

(a) When a registered recipient has been found to have failed or refused without good cause to participate· in the WIN program, the following sanctions shall apply:

(1) If such individual is a caretaker relative receiving AFDC, his needs will not be taken into account in determining the family's need for assistance, and assistance in the form of protective or vendor payments or of foster care will be provided to the remaining members of the assistance unit. Under such circumstances, the caretaker relative may not be the protective payee;

(2) If such individual is the only dependent child in the family, assistance for the family will be denied;

(3) If such individual is one of several dependent children in the family, assistance for such child will be denied and his needs will not be taken into account in determining the family's need for assistance;

(b) The sanctions under paragraph (a) of this section shall not be applied during a period of up to 60 days after such adverse decision, provided the registrant has been certified and accepts counseling and other necessary services aimed at persuading him to participate in the WIN program. Meanwhile, where the individual is a caretaker relative, assistance to his family in the form of protective or vendor payments and counseling and other necessary services shall be provided by the State welfare agency.

(c) If an individual registered on a voluntary basis, pursuant to § 56.20 of this part, discontinues participation in the work incentive program he and his family are not subject to the sanctions under this section.

(d) In the event a registrant is referred back to the IMU as having good cause for not continuing on a training plan or a job, the IMU shall promptly restore the assistance payment to the individual or make other necessary payment adjustments.

29 CFR § 56.77 provides:

### § 56.77 Subsequent WIN registration by deregistered individuals.

(a) Individuals who were deregistered on the basis of a "without good cause" deter-

mination may, upon application, again register for WIN, provided 90 days have elapsed since their deregistration and they have given evidence to the WIN project staff of willingness to participate. If he is subsequently deregistered following a "without good cause finding" he shall not be registered or reaccepted in the WIN program unless satisfactory evidence is given of willingness to participate and 6 months have elapsed since the effective date of the latest deregistration.

(b) An individual who has been reaccepted into the WIN program after such deregistration shall have the same rights as an individual who registers for the first time.

(c) Reacceptance into the WIN program may be denied where the termination action was the result of the individual's disruptive behavior or of criminal or other activities which presented a hazard to the staff or others.

18 N.Y.C.R.R. § 388.9 provides in pertinent part:

"§ 388.9 *Sanctions.* (a) When it has been determined that a non-exempt individual has, without good cause, refused to register, refused to comply with the joint appraisal process (including appearance at a joint appraisal interview), or as a participant, refused to participate in the WIN program or accept a bona fide offer of employment, the following sanctions shall be applied. When such an individual is:

(1) the unemployed father in an ADC–U case, his needs shall not be taken into account in determining the family's need for assistance, and assistance shall be furnished to the eligible of the family under the ADC program. When such unemployed father is the caretaker relative, assistance shall be provided in the form of protective or vendor payments for all other eligible members of the family. At this time the exemption status of the mother or other female caretaker shall be reviewed since the primary reason for her exemption may have been removed;

(2) a caretaker relative receiving ADC, his needs shall not be taken into account in determining the family's need for assistance, and assistance in the form of protective or vendor payments or of foster care shall be provided;

(3) the only dependent child in the family, ADC assistance for the family shall be denied or discontinued and HR shall be provided for the eligible caretaker relative; or

(4) one of several dependent children in the family, assistance for such child shall be denied or discontinued and his needs shall not be taken into account in determining the family's need for ADC.

\*    \*    \*    \*    \*    \*

(d) The period of time for which sanctions shall be applied is as follows:

(1) The needs of a non-exempt individual who fails to register for the WIN program shall not be considered until he registers;

(2) Any individual who has been terminated from WIN on the basis of refusal to participate without good cause shall wait for 90 days from the termination of his ADC grant before he may again register for WIN; or

(3) Any individual who has been reaccepted into the WIN program after termination on the basis of refusal to participate without good cause, and is subsequently terminated again on the same basis, shall wait for a period of six months from the termination of the ADC grant before he may again register for WIN."

## APPENDIX B

42 U.S.C. § 602(a) provides:

### § 602. State plans for aid and services to needy families with children; contents; approval by Secretary

(a) A State plan for aid and services to needy families with children must (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them; (2) provide for financial participation by the State; (3) either provide for the establishment or designation of a single State agency to administer the plan, or provide for the

establishment or designation of a single State agency to supervise the administration of the plan; (4) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness; (5) provide (A) such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Secretary to be necessary for the proper and efficient operation of the plan, and (B) for the training and effective use of paid subprofessional staff, with particular emphasis on the full-time or part-time employment of recipients and other persons of low income, as community services aides, in the administration of the plan and for the use of nonpaid or partially paid volunteers in a social service volunteer program in providing services to applicants and recipients and in assisting any advisory committees established by the State agency; and (6) provide that the State agency will make such reports, in such form and containing such information, as the Secretary may from time to time require, and comply with such provisions as the Secretary may from time to time find necessary to assure the correctness and verification of such reports; (7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income; (8) provide that, in making the determination under clause (7), the State agency—

(A) shall with respect to any month disregard—

(i) all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment, and

(ii) in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month (except that the provisions of this clause (ii) shall not apply to earned income derived from participation on a project maintained under the programs established by section 632(b)(2) and (3) of this title); and

(B)(i) may, subject to the limitations prescribed by the Secretary, permit all or any portion of the earned or other income to be set aside for future identifiable needs of a dependent child, and

(ii) may, before disregarding the amounts referred to in subparagraph (A) and clause (i) of this subparagraph, disregard not more than $5 per month of any income;

except that, with respect to any month, the State agency shall not disregard any earned income (other than income referred to in subparagraph (B)) of—

(C) any one of the persons specified in clause (ii) of subparagraph (A) if such person—

(i) terminated his employment or reduced his earned income without good cause within such period (of not less than 30 days) preceding such month as may be prescribed by the Secretary; or

(ii) refused without good cause, within such period preceding such month as may be prescribed by the Secretary, to accept employment in which he is able to engage which is offered through the public employment offices of the State, or is otherwise offered by an employer if the offer of such employer is determined by the State or local agency administering the State plan, after notification by him, to be a bona fide offer of employment; or

(D) any of such persons specified in clause (ii) of subparagraph (A) if with respect to such month the income of the persons so specified (within the meaning of clause (7)) was in excess of their need as determined by the State agency pursuant to clause (7) (without regard to clause (8)), unless, for any one of the four months preceding such month, the needs of such persons were met by the furnishing of aid under the plan;

(9) provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of aid to families with dependent children; (10) provide, effective July 1, 1951, that all individuals wishing to make application for aid to families with dependent children shall have opportunity to do so, and that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals; (11) effective July 1, 1952, provide for prompt notice to appropriate law-enforcement officials of the furnishing of aid to families with dependent children in respect of a child who has been deserted or abandoned by a parent; (12) provide, effective October 1, 1950, that no aid will be furnished any individual under the plan with respect to any period with respect to which he is receiving old-age assistance under the State plan approved under section 302 of this title; (13) provide a description of the services which the State agency makes available to maintain and strengthen family life for children, including a description of the steps taken to assure, in the provision of such services, maximum utilization of other agencies providing similar or related services; (14) provide for the development and application of a program for such family services, as defined in section 606(d) of this title, and child-welfare services, as defined in section 625 of this title, for each child and relative who receives aid to families with dependent children, and each appropriate individual (living in the same home as a relative and child receiving such aid whose needs are taken into account in making the determination under clause (7)), as may be necessary in the light of the particular home conditions and other needs of such child, relative, and individual, in order to assist such child, relative, and individual to attain or retain capability for self-support and care and in order to maintain and strengthen family life and to foster child development; (15) provide (A) for the development of a program, for each appropriate relative and dependent child receiving aid under the plan and for each appropriate individual (living in the same home as a relative and child receiving such aid) whose needs are taken into account in making the determination under clause (7), for preventing or reducing the incidence of births out of wedlock and otherwise strengthening family life, and for implementing such program by assuring that in all appropriate cases (including minors who can be considered to be sexually active) family planning services are offered to them and are provided promptly (directly or under arrangements with others) to all individuals voluntarily requesting such services, but acceptance of family planning services provided under the plan shall be voluntary on the part of such members and individuals and shall not be a prerequisite to eligibility for or the receipt of any other service under the plan; and (B) to the extent that services provided under this clause or clause (14) are furnished by the staff of the State agency or the local agency administering the State plan in each of the political subdivisions of the State, for the establishment of a single organizational unit in such State or local agency, as the case may be, responsible for the furnishing of such services; (16) provide that where the State agency has reason to believe that the home

in which a relative and child receiving aid reside is unsuitable for the child because of the neglect, abuse, or exploitation of such child it shall bring such condition to the attention of the appropriate court or law enforcement agencies in the State, providing such data with respect to the situation it may have; (17) provide—

(A) for the development and implementation of a program under which the State agency will undertake—

(i) in the case of a child born out of wedlock who is receiving aid to families with dependent children, to establish the paternity of such child and secure support for him, and

(ii) in the case of any child receiving such aid who has been deserted or abandoned by his parent, to secure support for such child from such parent (or from any other person legally liable for such support), utilizing any reciprocal arrangements adopted with other States to obtain or enforce court orders for support, and

(B) for the establishment of a single organizational unit in the State agency or local agency administering the State plan in each political subdivision which will be responsible for the administration of the program referred to in clause (A);

(18) provide for entering into cooperative arrangements with appropriate courts and law enforcement officials (A) to assist the State agency in administering the program referred to in clause (17)(A), including the entering into of financial arrangements with such courts and officials in order to assure optimum results under such program, and (B) with respect to any other matters of common concern to such courts or officials and the State agency or local agency administering the State plan; (19) provide—

(A) that every individual, as a condition of eligibility for aid under this part, shall register for manpower services, training, and employment as provided by regulations of the Secretary of Labor, unless such individual is—

(i) a child who is under age 16 or attending school full time;

(ii) a person who is ill, incapacitated, or of advanced age;

(iii) a person so remote from a work incentive project that his effective participation is precluded;

(iv) a person whose presence in the home is required because of illness or incapacity of another member of the household;

(v) a mother or other relative of a child under the age of six who is caring for the child; or

(vi) the mother or other female caretaker of a child, if the father or another adult male relative is in the home and not excluded by clause (i), (ii), (iii), or (iv) of this subparagraph (unless he has failed to register as required by this subparagraph, or has been found by the Secretary of Labor under section 633(g) of this title to have refused without good cause to participate under a work incentive program or accept employment as described in subparagraph (F) of this paragraph);

and that any individual referred to in clause (v) shall be advised of her option to register, if she so desires, pursuant to this paragraph, and shall be informed of the child care services (if any) which will be available to her in the event she should decide so to register;

(B) that aid under the plan will not be denied by reason of such registration or the individual's certification to the Secretary of Labor under subparagraph (G) of this paragraph, or by reason of an individual's participation on a project under the program established by section 632(b)(2) or (3) of this title;

(C) for arrangements to assure that there will be made a non-Federal contribution to the work incentive programs established by part C by appropriate agencies of the State or private organizations of 10 per centum of the cost of such programs, as specified in section 635(b) of this title;

(D) that (i) training incentives authorized under section 634 of this title, and income derived from a special work project under the program established by section 632(b)(3) of this title shall be disregarded in determining the needs of an individual under section 602(a)(7) of this title, and (ii) in determining such individual's needs the additional expenses attributable to his participation in a program established by section 632(b)(2) or (3) of this title shall be taken into account;

(E) Repealed. Pub.L. 92–223, § 3(a)(5), Dec. 28, 1971, 85 Stat. 804.

(F) that if and for so long as any child, relative, or individual (certified to the Secretary of Labor pursuant to subparagraph (G)) has been found by the Secretary of Labor under section 633(g) of this title to have refused without good cause to participate under a work incentive program established by part C with respect to which the Secretary of Labor has determined his participation is consistent with the purposes of such part C, or to have refused without good cause to accept employment in which he is able to engage which is offered through the public employment offices of the State, or is otherwise offered by an employer if the offer of such employer is determined, after notification by him, to be a bona fide offer of employment—

(i) if the relative makes such refusal, such relative's needs shall not be taken into account in making the determination under clause (7), and aid for any dependent child in the family in the form of payments of the type described in section 606(b)(2) of this title (which in such a case shall be without regard to clauses (A) through (E) thereof) or section 608 of this title will be made;

(ii) aid with respect to a dependent child will be denied if a child who is the only child receiving aid in the family makes such refusal;

(iii) if there is more than one child receiving aid in the family, aid for any such child will be denied (and his needs will not be taken into account in making the determination under clause (7)) if that child makes such refusal; and

(iv) if such individual makes such refusal, such individual's needs shall not be taken into account in making the determination under clause (7);

except that the State agency shall, for a period of sixty days, make payments of the type described in section 606(b)(2) of this title (without regard to clauses (A) through (E) thereof) on behalf of the relative specified in clause (i), or continue aid in the case of a child specified in clause (ii) or (iii), or take the individual's needs into account in the case of an individual specified in clause (iv), but only if during such period such child, relative, or individual accepts counseling or other services (which the State agency shall make available to such child, relative, or individual) aimed at persuading such relative, child, or individual, as the case may be, to participate in such program in accordance with the determination of the Secretary of Labor; and

(G) that the State agency will have in effect a special program which (i) will be administered by a separate administrative unit and the employees of which will, to the maximum extent feasible, perform services only in connection with the administration of such program, (ii) will provide (through arrangements with others or otherwise) for individuals who have been registered pursuant to subparagraph (A), in accordance with the order of priority listed in section 633(a) of this title, such health, vocational rehabilitation, counseling, child care, and other social and supportive services as are necessary to enable such individuals to accept employment or receive manpower training provided under part C, and will, when arrangements have been made to provide necessary supportive services, including child care, certify to the Secretary of Labor those individuals who are ready for employment or training under part C, (iii) will participate in the development of operational and employability plans under section 633(b) of this title; and (iv) provides for purposes of clause (ii), that,

when more than one kind of child care is available, the mother may choose the type, but she may not refuse to accept child care services if they are available;

(20) effective July 1, 1969, provide for aid to families with dependent children in the form of foster care in accordance with section 608 of this title; (21) provide that the State agency will report to the Secretary, at such times (not less often than once each calendar quarter) and in such manner as the Secretary may prescribe—

(A) the name, and social security account number, if known, of each parent of a dependent child or children with respect to whom aid is being provided under the State plan—

(i) against whom an order for the support and maintenance of such child or children has been issued by a court of competent jurisdiction but who is not making payments in compliance or partial compliance with such order, or against whom a petition for such an order has been filed in a court having jurisdiction to receive such petition, and

(ii) whom it has been unable to locate after requesting and utilizing information included in the files of the Department of Health, Education, and Welfare maintained pursuant to section 405 of this title,

(B) the last known address of such parent and any information it has with respect to the date on which such parent could last be located at such address, and

(C) such other information as the Secretary may specify to assist in carrying out the provisions of section 610 of this title;

(22) provide that the State agency will, in accordance with standards prescribed by the Secretary, cooperate with the State agency administering or supervising the administration of the plan of another State under this part—

(A) in locating a parent residing in such State (whether or not permanently) against whom a petition has been filed in a court of competent jurisdiction of such other State for the support and maintenance of a child or children of such parent with respect to whom aid is being provided under the plan of such other State, and

(B) in securing compliance or good faith partial compliance by a parent residing in such State (whether or not permanently) with an order issued by a court of competent jurisdiction against such parent for the support and maintenance of a child or children of such parent with respect to whom aid is being provided under the plan of such other State;

and (23) provide that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted; and (24) if an individual is receiving benefits under subchapter XVI of this chapter, then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this subchapter and his income and resources shall not be counted as income and resources of a family under this subchapter.

(b) The Secretary shall approve any plan which fulfills the conditions specified in subsection (a) of this section, except that he shall not approve any plan which imposes as a condition of eligibility for aid to families with dependent children, a residence requirement which denies aid with respect to any child residing in the State (1) who has resided in the State for one year immediately preceding the application for such aid, or (2) who was born within one year immediately preceding the application, if the parent or other relative with whom the child is living has resided in the State for one year immediately preceding the birth.

(c) The Secretary shall, on the basis of his review of the reports received from the States under clause (15) of subsection (a) of this section, compile such data as he be-

lieves necessary and from time to time publish his findings as to the effectiveness of the programs developed and administered by the States under such clause. The Secretary shall annually report to the Congress (with the first such report being made on or before July 1, 1970) on the programs developed and administered by each State under such clause (15).

Aug. 14, 1935, c. 531, Title IV, § 402, 49 Stat. 627; Aug. 10, 1939, c. 666, Title IV, § 401, 53 Stat. 1379; 1946 Reorg.Plan No. 2, § 4, eff.

## APPENDIX C

42 U.S.C. § 630 provides:

### § 630. Statement of purpose

The purpose of this part is to require the establishment of a program utilizing all available manpower services, including those authorized under other provisions of law, under which individuals receiving aid to families with dependent children will be furnished incentives, opportunities, and necessary services in order for (1) the employment of such individuals in the regular economy, (2) the training of such individuals for work in the regular economy, and (3) the participation of such individuals in public service employment, thus restoring the families of such individuals to independence and useful roles in their communities. It is expected that the individuals participating in the program established under this part will acquire a sense of dignity, self-worth, and confidence which will flow from being recognized as a wage-earning member of society and that the example of a working adult in these families will have beneficial effects on the children in such families.

## APPENDIX D

42 U.S.C. § 633(g) provides:

(g) Where an individual, certified to the Secretary of Labor pursuant to section 602(a)(19)(G) of this title refuses without good cause to accept employment or participate in a project under a program established by this part, the Secretary of Labor shall (after providing opportunity for fair hearing) notify the State agency which certified such individual and submit such other information as he may have with respect to such refusal.

42 U.S.C. § 639 provides:

### § 639. Rules and regulations

The Secretary and the Secretary of Health, Education, and Welfare shall, not later than July 1, 1972, issue regulations to carry out the purposes of this part. Such regulations shall provide for the establishment, jointly by the Secretary and the Secretary of Health, Education, and Welfare, of (1) a national coordination committee the duty of which shall be to establish uniform reporting and similar requirements for the administration of this part, and (2) a regional coordination committee for each region which shall be responsible for review and approval of statewide operational plans developed pursuant to section 633(b) of this title.

Aug. 14, 1935, c. 531, Title IV, § 439, as added Jan. 2, 1968, Pub.L. 90–248, Title II, § 204(a), 81 Stat. 888, and amended Dec. 28, 1971, Pub.L. 92–223, § 3(b)(8), 85 Stat. 808.

42 U.S.C. § 1302 provides:

### § 1302. Rules and regulations

The Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health, Education, and Welfare, respectively, shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter.

Aug. 14, 1935, c. 531, Title XI, § 1102, 49 Stat. 647; 1946 Reorg.Plan No. 2, §§ 1, 4, eff. July 16, 1946, 11 F.R. 7873, 60 Stat. 1095; 1949 Reorg.Plan No. II, § 1, eff. Aug. 20, 1949, 14 F.R. 5225, 63 Stat. 1065; 1950 Reorg.Plan No. 19, § 1, eff. May 24, 1950, 15 F.R. 3178, 64 Stat. 1271; Aug. 28, 1950, c. 809, Title IV, § 403(c), 64 Stat. 559; 1953 Reorg.Plan No. 1, §§ 5, 8, eff. Apr. 11, 1953, 18 F.R. 2053, 67 Stat. 631.